Lewis Barker v. Commissioner.
Barker v. Commissioner
Docket No. 110890.
United States Tax Court
1943 Tax Ct. Memo LEXIS 112; 2 T.C.M. (CCH) 797; T.C.M. (RIA) 43426; September 20, 1943
*112 1. Grantor held not taxable under section 22(a) of the Revenue Act of 1938 and the Internal Revenue Code upon income of an irrevocable trust where he had reserved no rights in himself to corpus or income, the devolution of corpus to his grandchildren after the death of his children was definitely fixed, as was the disposition to be made of income after his wife's death, and where his only reserved power of substance was the right during his wife's lifetime to direct that income be paid to her or accumulated for the benefit of his children while they were minors or paid to the latter after majority. 2. The trust contained no provision for the payment of premiums upon insurance covering petitioner's life. Held, the income of the trust is not taxable to petitioner under section 167(a)(3), notwithstanding the beneficiary voluntarily paid a portion of her distributions toward such premiums. Edward B. Lucius, Esq., 1006 Field Bldg., Chicago, Ill., for the petitioner. Charles J. Munz, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: The Commissioner determined income tax deficiencies for the years 1938 and 1939 in the respective amounts of $2,287.99 and $11,541.19. *113 The issue is whether the income of a trust created by petitioner is taxable to him under sections 22(a) and/or 167(a)(3) of the Revenue Act of 1938 and the Internal Revenue Code. Petitioner's returns were filed in the first district of Illinois. Most of the facts have been stipulated. [The Facts] Petitioner created a trust in Illinois on December 14, 1936. On that date his immediate family consisted of his wife Winifred and three minor children ranging in age from 8 to 15 years. The corpus of the trust was, and has since remained, 5,000 shares of the common stock of the United Autographic Register Company. Petitioner and his older brother Walter have been associated with this company for more than 20 years, the latter as president and petitioner as vice president. From December 14, 1936 through the year 1939 the company had outstanding approximately 94,500 shares of common stock and 2,500 shares of preferred stock, each class having voting privileges, owned as follows: Dec. 14,
Dec. 5,
Common Stock
1936
1939
Petitioner
16,048 3/4
13,193 3/4
Walter Barker and wife
24,827 1/2
22,327 1/2
Petitioner's 3 married sis-
ters
1,390
6,390
Petitioner's son
355
Petitioner, Trustee
5,400
5,400
Walter Barker, Trustee
5,800
5,800
Petitioner and Walter Bar-
ker, Trustees
5,000
5,000
58,466 1/4
58,466 1/4
All other common stock-
holders (approximately 271
in number)
35,952 1/4
36,102 1/4
Preferred stock
2,500
2,500
Total
96,918 1/2
97,068 1/2
*114 Petitioner and his brother Walter were named co-trustees of the trust. On December 14, 1936, a certificate representing 5,000 shares of United Autographic Register Company common stock was endorsed by petitioner and delivered to the company, which issued a new certificate in the names of the co-trustees. Dividends on this stock were received in 1938 and 1939 in the sums of $6,250 and $20,000, respectively. The dividends were paid by checks made out to the co-trustees, were endorsed by them to petitioner's wife Winifred (pursuant to petitioner's direction as set forth hereinafter), and were deposited in her individual bank accounts. No bank account has ever been maintained by the trust. The trust has had no expenses except an item of $1,100 as a legal fee in 1939. Petitioner's wife had no source of income in the tax years other than the trust. She used none of the trust income for household expenses. In the five years from July 1937 to July 1942, she received all the trust income, approximately $83,000. With this she purchased approximately $53,000 in Government bonds, and paid approximately $6,000 as real estate taxes upon her own property and $12,000 as individual income tax. Approximately *115 $6,000 was paid as premiums on life insurance policies upon the life of petitioner, the amounts so paid in each of the tax years being $1,638.50. This amount was paid upon two policies which had been taken out in 1925 and 1926, respectively, naming petitioner's wife as beneficiary. One of the policies had been issued upon application of the wife, who had reserved the right to exercise any of the provisions, options or rights contained in the policy on her own signature. As to the other policy the petitioner, on January 10, 1938, executed an amendment relinquishing all legal incidents of ownership therein and conveying the same to his wife and/or children. From 1938 the wife has paid the premiums on this latter policy; and she has paid the premiums on the other policy since creation of the trust in 1936. Prior thereto she had paid none of the premiums on either policy. They had been paid by petitioner. Petitioner at all times since 1937 has paid from his own income the support and maintenance of his family. He had net income, as reported on his returns for the years 1936 through 1939, of $71,000, $69,000, $55,000 and $85,000, respectively. The trust instrument begins with a declaration *116 of petitioner's intention to make gifts in trust to his wife and each of his three children, whose names are set forth, for their individual benefit and the benefit of their issue, subject to the restrictions and conditions set forth therein. Paragraph 1 vests in the trustees usual powers of management and control over the trust corpus, including the rights to sell, collect income, and invest and reinvest, without restriction as to the laws governing the investment or administration of trust funds. Paragraph 2 provides that after the payment of necessary expenses the balance of the income until January 1, 1938 shall be paid to petitioner's wife Winifred "and thereafter to her or to such person or persons as Lewis Barker, one of the Trustees [petitioner herein], shall by written direction delivered to the Trustees, from time to time direct; provided, however, that said Lewis Barker shall have no right at any time to direct the payment to himself of any part whatsoever of the income from said Trust Estate." In the absence of any such direction the instrument provided that the income should be accumulated by the trustees during the minorities of the three children, "who are designated *117 as the 'Beneficiaries' herein." The income so accumulated from one-third of the trust estate was to be paid to each child upon reaching majority. Should one of the children die before reaching his or her majority, the share that would have gone to him or her, in the absence of issue, was to be paid to the surviving children when they reached their respective majorities. Paragraph 6 provided that the surviving spouse or issue of any deceased child should be entitled, per stirpes, to the proportion of the trust estate and income to which the deceased child would have been entitled. The instrument specifically provided that the trustees should make no payment of income to or for the benefit of any of the three children during their minorities. Paragraph 3 directed the trustees, if petitioner should so direct, to continue payments of the entire income to petitioner's wife after January 1, 1938, and provided that in the event of such designation, the three children "shall not be entitled during the period specified in such direction to any accumulation of income which under the prior provisions hereof would otherwise be accumulated for their respective benefits and paid to them *118 upon their reaching their respective majorities as hereinabove set forth." Paragraph 5 provided that from and after the death of Winifred and during the lives of the three children, after attaining their majorities, the income "shall be paid one-third thereof to each of said Beneficiaries * * *." Paragraph 4 provided that if Winifred be entitled to receive the income at the time of her death, "such income shall thereupon, in the event that said named Beneficiaries have attained their majorities, be paid direct to said Beneficiaries." The share, however, of any beneficiary who at the death of Winifred was a minor was to be accumulated until he or she attained majority. The first sentence in paragraph 7 is as follows: The Trust herein created shall continue for twenty-one (21) years after the death of the last surviving of the Donor's wife and of the named Beneficiaries and during the period of the continuance thereof, the income of the Trust shall be paid to said Donor's wife or the named Beneficiaries or the husband or wife or issue of any deceased Beneficiary, in the manner hereinabove set forth. * * * Paragraph 8 provided that at the termination of the trust the corpus should *119 be divided "among such issue of the Beneficiaries as shall at such time be receiving the income therefrom and in the proportion in which such income shall be payable to such issue." Paragraph 10 provided that the income and corpus of the trust could not be assigned or transferred in anticipation by petitioner's wife or any of the children nor should they be subject to payment of their debts or obligations prior to actual receipt thereof. Paragraph 11 provided for successor trustees, the provisions being that petitioner's two sons should respectively become successor trustees as vacancies should occur among the trustees. In the event a vacancy in the trusteeship should occur before either of said sons attained his majority, the surviving trustee was to act alone until one of said sons should attain his majority, at which time the son was to become a co-trustee. The concluding paragraph of the trust, number 12, declared that the trust should be irrevocable. It was provided, however, that the agreement could be altered or amended at any time or from time to time by a writing signed by petitioner and the trustees then empowered to act under the agreement - * * * provided, however, *120 that no such alteration or amendment shall have the effect of revoking, changing or modifying the gifts of or distributions of the corpus of the Trust Estate or any part thereof, or the income therefrom, or any part of such income, as in this agreement set forth, but shall be limited only to such matters and things as the acceleration of the time within which the principal of this Trust shall be payable to those of the beneficiaries at such time entitled to receive the income therefrom, and shall be limited further only to such matters and things as the designation of successor Trustees, the power of investment of trust funds and such other matters as do not effect a revocation of the gifts in trust herein made. On December 15, 1936, petitioner, by instrument in writing addressed to the trustees, directed them until further order to pay to his wife Winifred any income received upon the 5,000 shares of United Autographic Register Company common stock. [Opinion] The issue under section 22(a) turns in this case almost entirely upon the interpretation to be given the trust instrument. The indenture contains many contradictions and for this reason its terms have been set forth *121 rather fully above. Briefly, we think the proper construction of the instrument is this: the income is to be paid only to petitioner's wife, his children, their spouses, and/or his grandchildren. That is to say, during the lifetime of petitioner's wife and the minority of his children, the income is to be either paid to the wife or accumulated for the children, in petitioner's discretion; after the children attain their majorities the income is to be distributed among them and/or the wife, again as directed by petitioner; upon the wife's death income is to go in definite shares to the children, their surviving spouses or issue; and the trust is to terminate and corpus is to be distributed among the grandchildren at least within 21 years after the death of the last survivor of petitioner's children. Thus the trust is of the longest term possible under the laws of Illinois. Devolution of corpus is definitely and irrevocably fixed beyond alteration by petitioner, as is the distribution of income after the wife's death. Never again can either the corpus or income be used for petitioner's own purposes. Administrative management of the estate is lodged in the co-trustees, petitioner and *122 his older brother, but the powers granted to them as such are not beyond the usual powers granted the ordinary trustee. The income stays in the family group. The reserved power most damaging to petitioner's case is the one during his wife's lifetime to appoint the income to her or the children. During the minorities of the children, however, this is simply a right to distribute to the wife or accumulate for the future enjoyment of the children, for the trust expressly forbids any distribution to the children as minors. This limited power of appointment over the income is not sufficient, in our judgment, to warrant a finding that petitioner remained the owner of the trust corpus. We cannot say that he retained the equivalent of full ownership, which we must find to invoke , after he had (1) relinquished all right ever again to use the corpus or income for his own purposes, (2) provided for the ultimate disposition of corpus and could do nothing thereafter to change it, (3) abandoned the right to direct the disposition of income after his wife's death, and (4) retained merely a power to appoint the income among a limited *123 group until that time. A grantor may still be treated as owner where, although he has given up his rights of personal consumption, he can sprinkle corpus and income among others without restriction. . We are drawing a line "where differences in degree produce ultimate differences in kind." . The present case, in our view, falls clearly on the other side of the line. The cases relied upon by respondent, principally ; ; and dealt with facts dissimilar to those before us and which were thought sufficient to warrant the conclusion that the taxpayers there remained the substantial owners of the trust property. We hold that petitioner here is not the owner of the trust corpus and therefore not taxable upon its income under 22(a). In the alternative the Commissioner argues that section 167(a)(3) requires that petitioner be taxed upon all the trust income, *124 since all of it could have been applied to insurance premiums, or at least upon part of the income that was actually paid by the wife as premiums on insurance covering petitioner's life. This question was injected into the case rather incidentally at the trial, as is evidenced by the statement of respondent's counsel that none of the trust income was used to pay insurance premiums, according to his understanding of the facts. The testimony revealed, however, that a portion of the income was so used by the wife after distribution to her. In the circumstances in which the question was raised, however, we think nothing can be made of this. There is no provision in the trust instrument whereby any part of the income was or could have been applied by the trustee to the payment of premiums upon insurance covering petitioner's life. The provision forbidding distribution of income to petitioner would equally prohibit its use to keep his insurance in force. And that the beneficiary voluntarily applied a part of her receipts from the trust to such premiums does not satisfy the requirements of section 167(a)(3) in the absence of an independent agreement with the grantor that such would be done. *125 Here there is no evidence of any restriction upon the wife's use of the income. Accordingly, section 167(a)(3) may not be invoked to tax the grantor. ; , reversed on other grounds, ; . Respondent's determination is reversed. Decision will be entered under Rule 50.